**TELERENT LEASING CORPORATION,**
**Plaintiff-Appellee,**

v.

**PACIFIC EASTERN CO., INC., etc.,**
**Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section.

Oct. 26, 1979.

Certiorari Denied by Supreme Court
Feb. 19, 1980.

Abridged March 6, 1980.

Thomas M. Evans, W. Ovid Collins, Nashville, for plaintiff-appellee.

Ames Davis, Nashville, for defendant-appellant.

## ABRIDGED OPINION

(With the concurrence of participating judges, the original opinion has been abridged for publication.)

TODD, Judge.

The defendant, Pacific Eastern Co., Inc. has appealed from a judgment in favor of plaintiff Telerent Leasing Corp., for $8,392.94 in a controversy arising out of a lease of equipment.

On June 16, 1972, plaintiff and defendant joined in a written lease agreement providing that plaintiff would lease to defendant a quantity of electronic equipment composed principally of television receivers for use in guest rooms of defendant's hotel. The term of said lease expired on January 31, 1978. Upon demand for return of the leased property, defendant refused to comply, and this suit was filed on May 9, 1978, seeking possession of 149 television receivers, rental of same since the expiration of the lease, personal property taxes which defendant had not paid as agreed, and the value of one television receiver stolen from the possession of defendant.

Prior to trial, defendant surrendered possession of the leased property remaining in its possession, and all other matters were reserved to the trial.

Defendant filed an answer and counterclaim asserting:

"1. Defendant was induced to enter into the agreement alleged in plaintiff's complaint by the representations of plaintiff's vice president, Jack Lynch, that upon the expiration of the term of the agreement, defendant would be permitted to purchase each of the television sets covered by the agreement for no more than $40 per set, and defendant alleges that the agreement was intended by the parties, and was in fact, an installment sales contract for the purchase of such television sets.

2. Defendant alleges that by its refusal to permit defendant to purchase said television sets for $40 per set, plaintiff breached said agreement; or alternatively, plaintiff is guilty of fraudulent misrepresentation which induced defendant to enter into such agreement.

3. As a result of plaintiff's said breach or said fraudulent misrepresentation, defendant has been damaged by the amount of the difference in the fair market value of said television sets and the agreed or represented price of $40 per set, for total damages of $13,430, based upon plaintiff's assertion that the sets have a fair market value of $125 apiece.

WHEREFORE, AND FOR ALL OF WHICH, defendant demands judgment of plaintiff in the amount of $13,430 and demands a jury to try this cause."

The matter was submitted to the jury in the form of four questions, the first three of which were answered by the jury as follows:

### "QUESTION NO. 1

Did plaintiff's vice president, Mr. Lynch, propose to Mr. Whittemore to sell the television sets to the defendant for $7.79 per month for 60 months and that the defendant would own the television sets at the end of the lease term?

YES  x       NO____

### QUESTION NO. 2

Did plaintiff's vice president, Mr. Lynch, tell Mr. Whittemore that the television sets would be worth no more than $40 per set at the conclusion of the lease term?

YES  x       NO____

### QUESTION NO.3

If plaintiff's vice president, Mr. Lynch, told Mr. Whittemore that the television sets would be worth no more than $40 per set at the conclusion of the lease, did Mr. Whittemore justifiably rely on such information in deciding whether or not to lease the televisions from plaintiff?

YES____        NO  x  "

Without further participation by the jury, the Chancellor awarded judgment to plaintiff.

The first assignment of error is:

"1. The Court below erred in excluding evidence of an agreement between the parties whereby Defendant was to be permitted to purchase the televisions at the conclusion of the lease for no more than $40 a set."

In the absence of the jury, Charles W. Whittemore testified that he had numerous conversations with Mr. Lynch, representative for Telerent Leasing Corp., from December, 1971 until June, 1972 when an agreement was reached; that he knew nothing about leasing television sets; that Lynch offered him two alternatives, both of which would result in defendant owning the sets at the end of the lease; that one alternative offered by Lynch was for defendant to pay $7.79 per month and thereby receive title to the sets at the end of the lease without further payments; that Lynch's other proposal was for defendant to pay $6.94 per month and purchase the sets at the end of the lease for market value; that Lynch stated the market value (ergo purchase price) at the end of the lease would be $35.00 or $40.00; that he, Whittemore, considered that it would be more economical to choose the lower rent and pay $35.00 or $40.00 for each set than to pay the higher rental and avoid the purchase price; and that, without the expectation of purchasing the sets at $35.00 or $40.00, he would not have selected the lower rent but would have agreed to the higher rent to thereby acquire title to the sets.

In response to plaintiff's objection to the testimony just summarized, the Chancellor ruled:

". . . Now insofar as the objection based upon the Parole Evidence Rule—it's the Court's conclusion that the Parole Evidence Rule is applicable. . . . Therefore the Court will not allow the jury to hear evidence and will not submit to the jury the issue in Interrogatory Number one of whether there was an agreement between the parties on the purchase of the TV sets . . . Now that leaves the question . . . of whether Mr. Whittemore will be permitted to testify as to representations made by Mr. Lynch which preceded the execution of the contract or if they were made contemporaneously with the execution of the contract. And in the Court's judgment that evidence is admissible under the theory advanced in the cross-complaint of negligent misrepresentation. If Mr. Whittemore is going to testify that Mr. Lynch told him—made certain facts of representation to him, which induced him on behalf of his corporation to enter into this lease agreement, I think both representations are admissible as evidence."

Appellant cites *Haynes v. Morton*, 32 Tenn.App. 251, 222 S.W.2d 389 (1949) wherein plaintiff agreed in writing to purchase a house *to be built* by defendant. Plaintiff purchased and moved into the house before it was completed on defendant's oral promise to complete the house and correct certain deficiencies therein. This Court held that plaintiff was entitled to recover damages for defendant's failure to perform the agreed improvements and said:

"[2] The parol evidence rule does not apply where the parol evidence in no way contradicts or alters the terms of the written contract, but tends to establish an independent or collateral agreement not in conflict with it." (32 Tenn.App. at 259, 222 S.W.2d at 393)

This authority is distinguishable because of the seller's position as builder with duties of satisfactory completion and specific oral promises of the seller to perform specific acts as inducement to the acceptance of the uncompleted house.

■ In the present case, if any option was discussed, it involved a possible sale five (5) years in the future, and the option price was market value. The statement of expected market price was a mere opinion, not of a firm agreement as to exact price. Without a specific price, the alleged option would be of no practical benefit to defendant corporation which refused an opportuni-

ty to buy the sets at actual market value. Also, the alleged oral agreement is contradictory to the express terms of the written lease which state that the sets shall be the property of and shall be returned to plaintiff at the end of the lease.

In *Hull-Dobbs, Inc. v. Mallicoat*, 57 Tenn. App. 100, 415 S.W.2d 344 (1966), the purchaser of an automobile was allowed damages based upon oral representations of the salesman as to the condition of the automobile at the time of the sale in spite of the provisions of a written contract excluding oral agreements. This Court held that the representations of *present condition* were an inducement to the contract which might be relied upon by the purchaser despite the wording of the written contract. This authority is distinguishable from the present case in which the "representation" of Mr. Lynch was his opinion of the market value of sets five (5) years in the future.

*Marron v. Scarbrough*, 44 Tenn.App. 414, 314 S.W.2d 165 (1958) was a suit to reform a warranty deed to include restrictions agreed upon in the written contract of sale and in a contemporaneous oral agreement. This Court decreed that the restriction included in the written contract should be added to the deed, but refused reformation to conform to the oral agreement and said:

". . . all testimony with reference to any alleged oral agreement between the parties prior to or contemporaneous with the execution of the written contract of sale on January 14, 1953, was incompetent under the parol evidence rule and should have been excluded by the Chancellor. . . . The test as to application of the parol evidence rule is whether the testimony as to oral agreements or negotiations varies or contradicts the instrument in question or merely explains same. The law is well settled that all evidence of verbal negotiations and stipulations anterior to or contemporaneous with the execution of a written instrument which contradict, alter or vary the terms of the written instrument is barred by the parol evidence rule, which is a rule of substantive law in Tennessee. (citing authorities) (44 Tenn. App. at 450, 451, 314 S.W.2d at 181)

To the same or similar effect are the subsequent cases of *Turner v. Zager*, 50 Tenn.App. 674, 363 S.W.2d 512 (1962); *Cummings v. Mascari*, 55 Tenn.App. 512, 402 S.W.2d 719 (1965); and *McMillin v. Great Southern Corporation*, Tenn.App. 1972, 480 S.W.2d 152.

For the reasons stated and on the authorities cited, this Court finds no error in the exclusion of evidence of the alleged oral agreement.

The first assignment of error is respectfully overruled.

The second and third assignments of error are as follows:

"2. The Court below erred in its Memorandum opinion in ruling that the jury found that Defendant did not rely upon any misrepresentations by Plaintiff."

"3. The Court below erred in not instructing the jury on what would constitute 'justifiable reliance.'"

As previously stated, in response to "Question No. 2", the jury reported its finding that plaintiff's representative did tell defendant's representative that the television sets would be worth no more than $40.00 per set at the end of the lease.

It is also true, as insisted by appellant, that plaintiff's representative admitted that he knew that the sets would be worth at least $115.00.

Appellant insists that the finding of the jury on Question 2 and the admission of plaintiff's representative establish tortious misrepresentation so as to require a judgment for defendant on its counterclaim in spite of the answer of the jury to Question No. 3 that the jury found that Mr. Whittemore did not justifiably rely upon Mr. Lynch's representation of the future value of the sets at the end of the lease.

Appellant insists, correctly, that Mr. Whittemore testified without contradiction that he did, indeed, rely upon the represen-

tation of Mr. Lynch as to future value. It is appellant's position that the answer to Question No. 3 indicates that the jury probably found that Mr. Whittemore's reliance upon the representation was not justified. This Court agrees that such was the probable finding of the jury; however, this Court cannot agree that the response of the jury to Question No. 3 should be invalidated because of the failure of the Chancellor to instruct the jury on what would constitute justifiable reliance.

Appellant did not specially request the Chancellor to so instruct the jury. At the conclusion of the charge, counsel for appellant stated:

"If Your Honor please, I have no objection to Your Honor's charge, except possibly with reference to burden of proof."

In *Rule v. Empire Gas Corp.*, Tenn.1978, 563 S.W.2d 551, this Court reversed for failure to instruct the jury on contributory negligence and assumption of risk in a case involving injuries from a fire and gas explosion. The Supreme Court reversed because the appellant submitted no special request for instructions to the Trial Judge and said:

"Rule 51.02 does permit a party to allege error in his motion for a new trial based upon (1) inaccuracy of the charge as given or (2) failure to give a requested appropriate instruction, although no objection or exception in this respect was made at the trial; but we find nothing in the rule which relieves trial counsel of the burden of requesting an instruction to cover alleged omissions in the instructions as given." (563 S.W.2d at 553)

Moreover, if the Chancellor had given instructions on justifiable reliance, such instruction should have been to the effect that, in order to constitute actionable fraud, the misrepresentation must be of a past or existing fact and not an opinion or conjecture as to future events.

In *Fowler v. Happy Goodman Family*, Tenn.1978, 575 S.W.2d 496, our Tennessee Supreme Court said:

"[4, 5] Tennessee has long adhered to the rule that in order for a fraudulent misrepresentation to be actionable, it must consist of a statement of an existing or past material fact, made with knowledge of its falsity or with reckless disregard of the truth." (575 S.W.2d at 498, 499)

To the same effect is *Edwards v. Travelers Insurance*, U.S. 6th Circuit Court of Appeals (Tenn.) 1977, 563 F.2d 105.

Mr. Whittemore admitted that he conducted extensive negotiations with plaintiff and four of its competitors before signing the subject contract in which several alterations were made before execution. This evidence would have been sufficient to justify the jury in disbelieving Mr. Whittemore's testimony that he relied solely upon the representation of Mr. Lynch as to future value in making his decision as to the contract he executed.

The second and third assignments of error are respectfully overruled.

The three assignments already discussed contain all of the complaints of defendant on appeal. No error is assigned as to the amount of the judgment awarded to plaintiff.

The decree of the Chancellor is affirmed. All costs, including costs of this appeal are taxed against defendant-appellant.

Affirmed.

SHRIVER, P. J., and LEWIS, J., concur.